[Crim. No. 6130.    Second Dist., Div. Two.    May 29, 1958.]

THE PEOPLE, Respondent, v. JAMES B. WOOD, Appellant.

Thomas B. Sawyer for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

HERNDON, J.—Appellant was convicted of eight felonious violations of section 115 of the Penal Code in knowingly procuring and offering to be filed with the Department of Motor Vehicles certain false documents described as "Dealer's Reports of Sale" and "Certificates of Non-Operation." He appeals from the order denying his motion for a new trial and from the judgment and sentence.

### The Question of Law Involved

The ultimate question of law presented by this appeal is simply this: Was appellant properly convicted of violations of section 115 of the Penal Code making it a felony to file in any public office within this state a false or forged instrument, which instrument, if genuine, might be filed under any law of this state; or was appellant chargeable only with violations of Vehicle Code, section 131, subdivision (d), declaring it a misdemeanor to make a false statement in any document required to be filed with the Motor Vehicle Department under the provisions of the Vehicle Code?

*The Facts*

Appellant is the president of Johnny's Used Cars, Inc., a used car dealer licensed by the Department of Motor Vehicles. In connection with the sale of an automobile, a dealer must prepare a ''Dealer's Report of Sale'' on a quadruplicate form provided by the Motor Vehicle Department. Of the four parts, one is retained by the dealer in the bound form book, one is attached to the windshield of the automobile sold, and the other two must be forwarded to the Department of Motor Vehicles not later than the end of the next business day following the sale. (See Veh. Code, § 177, subd. (b).) For each failure to submit the form within the required time, the Department of Motor Vehicles assesses a penalty of $3.00. In connection with the application for transfer of any interest in an automobile of which the registration has expired, the dealer must prepare and forward to the Department of Motor Vehicles a ''Certificate of Non-Operation.'' (See Veh. Code, § 164.5.)

These two forms are distinct from and in addition to the Certificate of Ownership, or so-called pink slip, or the conditional sale contract which transfers title to the purchaser. In the instant case the eight counts involved four separate transactions with different buyers, but, except for the names and the dates, the transactions are essentially similar and the relevant issues on this appeal can be discussed in terms of Counts I and II. Count I charges that on or about April 14, 1955, the appellant filed a false and forged instrument, to wit, ''a State of California, Department of Motor Vehicle, Dealer's Report of Sale.'' Count II alleges that at the same time he did knowingly ''procure and offer to be filed . . . a false and forged . . . Certificate of Non-Operation.'' Both of these documents relate to the sale of a motor vehicle by Johnny's Used Cars, Inc., to a Charles Davis. The falsity in the dealer's report of sale is that the report indicates that the sale took place on March 29, 1955, whereas the evidence indicates the sale took place on February 9, 1955. The certificate of nonoperation states that the vehicle had not been operated from January, 1955 to March, 1955, and the evidence indicates that the vehicle was operated by the purchaser from and after the sale on February 9, 1955.

The other counts in the information relate to three other sales to three separate purchasers and in each case the date of sale reported in the ''Dealer's Report of Sale'' and the ''Cer-

tificate of Non-Operation'' was substantially later than the actual date of sale.

The prosecution offered as evidence establishing the dates of sale the appellant's copy of the dealer's record of sale (which showed the correct dates), and the testimony of two witnesses, one of whom, Mrs. Noble, testified that she prepared the ''Certificate of Non-Operation'' at the direction of appellant and forwarded the documents in question to the Department of Motor Vehicles.

### Appellant's Contentions

Appellant urges only two substantial contentions as grounds for reversal: (1) that the offenses charged are punishable only as misdemeanors under section 131, subdivision (d) of the Vehicle Code, which was enacted more recently than section 115 of the Penal Code; and (2) that the two documents involved are not ''instruments'' within the meaning of section 115 of the Penal Code.

### The Statutes Involved

Section 115 of the Penal Code, under which appellant was convicted, was enacted in 1872 and provides as follows: ''Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, or registered, or recorded under any law of this state or of the United States, is guilty of *felony*.'' (Emphasis added.)

Section 131, subdivision (d) of the Vehicle Code was first enacted in 1937 (Stats. 1937, ch. 148, p. 413). It reads as follows: ''Any person who knowingly makes a false statement or conceals a material fact in any document required to be filed with the department as herein provided shall be guilty of a *misdemeanor*.'' (Emphasis added.)

### The Applicable Law

We have concluded that appellant's first contention must be sustained. We think it entirely clear that the Legislature intended the more recently enacted section 131, subdivision (d) of the Vehicle Code to provide the penalty for offenses of the type here involved.

It seems too clear to be reasonably questioned that the acts of the appellant, for which he was prosecuted in this case, amounted simply to the filing with the Motor Vehicle Department of documents containing false statements as to the

dates of the sales of certain automobiles, and as to the periods of time said automobiles had been out of operation. Clearly, no forgery was involved. Unquestionably, the acts charged amounted to violations of section 131, subdivision (d) of the Vehicle Code.

Our conclusion sustaining appellant's first contention renders it unnecessary for us to decide the question posed by appellant's second contention, that is to say, whether or not the documents in question are "instruments" within the meaning of section 115 of the Penal Code. We therefore refrain from deciding that question.

However, in seeking to discover the legislative intent as to the coverage of section 131, subdivision (d) of the Vehicle Code we may properly consider the legal background or the legal setting in which the statute was enacted. Relevant prior decisions of the appellate courts of California constitute a part of that background because the Legislature presumably acted with full knowledge of their purport. (*Estate of Simpson*, 43 Cal.2d 594, 600 [275 P.2d 467, 47 A.L.R.2d 991]; *Buckley* v. *Chadwick*, 45 Cal.2d 183, 200 [288 P.2d 12, 289 P.2d 242]; *Freeman* v. *Jergins*, 125 Cal.App.2d 536, 552-553 [271 P.2d 210].)

California decisions antedating the enactment of section 131, subdivision (d) of the Vehicle Code had so defined the word "instrument," as used in section 115 of the Penal Code, as to make it at least questionable whether the term would be held applicable to the various documents required to be filed with the Motor Vehicle Department by the provisions of the Vehicle Code.

Prominent among these earlier decisions defining the term "instrument" is *People* v. *Fraser* (1913), 23 Cal.App. 82, 84-85 [137 P. 276]. The defendant in that case was a physician who filed for record a false birth certificate which indicated that the couple intending to adopt the child were its natural parents. The trial court sustained a demurrer to the information which charged a violation of section 115 of the Penal Code. In affirming, the appellate court held that a birth certificate was not an instrument within the meaning of section 115. The decision holds that the word "instrument" as used in the various codes is limited in its application to a class of writings which it defines as follows:

"Generally the term 'instrument' as applied to documents necessarily imports a paper writing; but every paper writing is not necessarily an instrument within the settled statutory

meaning of the term. With reference to writing the term 'instrument' as employed in our statutes has been defined to mean an agreement expressed in writing, signed, and delivered by one person to another, transferring the title to or creating a lien on real property, or giving a right to a debt or duty. (*Hoag* v. *Howard*, 55 Cal. 564; *Foorman* v. *Wallace*, 75 Cal. 552 [17 P. 680].)''

In addition to the decisions cited in *People* v. *Fraser, supra,* there have been others similarly defining the term ''instrument'' as used in various statutory provisions. In the light of these decisions, the Legislature undoubtedly intended, when it enacted section 131, subdivision (d) of the Vehicle Code, to make effective provision for punishment of the type of offense here charged by a statute the application of which would not be open to reasonable question.

█ If we assume for the purposes of our discussion the correctness of respondent's contention that the documents in question are ''instruments'' within the meaning of section 115 of the Penal Code, the necessity for a reversal is no less clear. On the basis of that assumption, we are presented with a classic example of an earlier and more general statute being superseded or repealed *pro tanto* by a later and more specific statute which is clearly applicable to the factual situation involved. In *County of Placer* v. *Aetna Casualty & Surety Co.*, 50 Cal.2d 182 [323 P.2d 753], the well settled law is stated as follows:

█ ''Where the terms of a later specific statute apply to a situation covered by an earlier general one, the later specific statute controls (*People* v. *Haydon*, 106· Cal.App.2d 105, 111 [234 P.2d 720]). █ As we held in *Rose* v. *State*, 19 Cal.2d 713, 723, 724 [123 P.2d 505] : 'It is well settled, also, that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates.' (See also *People* v. *Moroney*, 24 Cal.2d 638, 644 [150 P.2d 888] ; *Coker* v. *Superior Court*, 70 Cal.App.2d 199, 201 [160 P.2d 885] ; *Whittemore* v. *Seydel*, 74 Cal.App.2d 109, 120 [168 P.2d 212].)''

*People* v. *Haydon, supra*, 106 Cal.App.2d 105, presented a closely analogous situation. There the defendant was convicted of presenting for payment a false and fraudulent claim

for California unemployment insurance in violation of section 72 of the Penal Code, a felony. This section, which also was enacted in 1872, provides: "Every person who, with intent to defraud, presents for allowance or for payment to any state board . . . any false or fraudulent claim . . . is guilty of a felony."

In reversing the judgment of conviction, the appellate court held that section 72 was repealed *pro tanto* by the amendment in 1943 of section 101 of the Unemployment Insurance Act[1] providing in part as follows: "It is a misdemeanor: (a) Wilfully to make a false statement or representation or knowingly fail to disclose a material fact to obtain, increase, reduce, or defeat any benefit or payment under the provisions of this act. . . ."

In *People* v. *Zappello*, 111 N.Y.S.2d 317, the New York court held that a defendant charged with filing a false application for registration of a motor vehicle could not properly be convicted under section 2051 of the Penal Law of New York (substantially the same in language as our Pen. Code, § 115) in view of the later enactment of section 70 of the Vehicle and Traffic Laws of New York, which provided in substance that any person making a false statement in an application for registration of a motor vehicle was guilty of a misdemeanor.

It clearly appears, therefore, that appellant was convicted of felonious violations of a penal statute wholly inapplicable to the offenses charged and proved. He should have been charged with misdemeanor violations of the indicated section of the Vehicle Code.

The judgment and the order denying a new trial are reversed, and the purported appeal from the sentence is dismissed.

Fox, P. J., and Ashburn, J., concurred.

---

[1] Stats. 1943, chapter 1111, page 3051; as since amended, see Unemployment Insurance Code, section 2101.