218 P.3d 1012

**STATE of Arizona, Appellant,**

v.

**Russell L. JONES, Appellee.**

**No. 1 CA–CR 07–0808.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 24, 2009.

See also, *Moreno v. Jones, 213 Ariz. 94, 139 P.3d 612.*

---

Andrew P. Thomas, Maricopa County Attorney By Lisa Marie Martin, Deputy County Attorney, Phoenix, Attorneys for Appellant.

Coppersmith Schermer & Brockelman, P.L.C. By James J. Belanger, Phoenix, Attorneys for Appellee.

## OPINION

JOHNSEN, Judge.

¶ 1 Russell L. Jones was indicted on nine counts of violating Arizona Revised Statutes ("A.R.S.") section 39–161 (2001) in connection with nomination petitions filed in support of his campaign for re-election to the state Senate in 2006. The theory underlying the indictment was that Jones falsely verified that signatures on the petitions were made in his presence. The superior court granted his motion to dismiss the charges, and the State appeals. We conclude an instrument that contains an untrue statement falls within A.R.S. § 39–161 only if the instrument is counterfeit, inauthentic or otherwise not gen-

uine. In this case, even if Jones falsely verified the petitions, he did not violate the statute because his verifications did not render the petitions not genuine.

■ ¶ 2 The indictment also charged Jones with a scheme or artifice to defraud in connection with the petitions in violation of A.R.S. § 13–2311 (2001), a crime that requires proof of specific intent to defraud. *See State v. Haas*, 138 Ariz. 413, 418, 675 P.2d 673, 678 (1983). As discussed *infra*, note 14, although the superior court dismissed this charge, the State does not argue for its reinstatement. Accordingly, we affirm the judgment of dismissal.

## FACTUAL AND PROCEDURAL HISTORY

¶ 3 Jones sought re-election to the Senate from Legislative District 24 in Yuma. *Moreno v. Jones*, 213 Ariz. 94, 95, ¶ 1, 139 P.3d 612, 613 (2006).[1] Jones filed 29 nomination petitions with the Secretary of State. *Id.* at 96, ¶ 3, 139 P.3d at 614. He personally verified 19 of the petitions as circulator. *Id.*

¶ 4 An elector filed a civil complaint challenging Jones's petitions, alleging, *inter alia,* that because Jones had verified petitions containing signatures he himself had not obtained, he had committed petition forgery. *Id.* at ¶ 4; *see* A.R.S. § 16–351(F) (2006) (disqualifying all petitions of candidate who commits petition forgery).[2] The superior court upheld the challenge. *Moreno,* 213 Ariz. at 96, ¶ 8, 139 P.3d at 614. It found that Jones "was not in fact the circulator for certain signatures" on seven petitions circulated at a town hall meeting in Yuma and that two other petitions were disqualified because Jones verified them "when in fact he was in Phoenix when the signatures were obtained in Yuma." *Id.* at 96–97, ¶¶ 8, 12,

139 P.3d at 614–15. The court held Jones had committed petition forgery. *Id.* at 97, ¶ 12, 139 P.3d at 615.

¶ 5 On appeal, our supreme court reversed the superior court. *Id.* at 102–03, ¶ 46, 139 P.3d at 620–21. It held that because "Jones improperly signed his name to the petitions ... as the circulator," substantial evidence supported the superior court's "finding that Jones had presented to the Secretary of State nomination petitions that he had verified as the circulator knowing that he had not obtained the signatures in his presence as required by A.R.S. § 16–321(D)." *Id.* at 98, 101, ¶¶ 22, 38, 139 P.3d at 616, 619. The supreme court concluded, however, that Jones's acts did not constitute petition forgery in violation of A.R.S. § 16–341(F). *Id.* at 101, ¶ 38, 139 P.3d at 619. In so holding, the court remarked that it did "not, of course, express any view whether a candidate's false verification of a nominating petition ... might merit prosecution under A.R.S. § 13–2002 (forgery), A.R.S. § 13–2702 (perjury), or other criminal provisions." *Id.* at 101 n. 3, ¶ 38, 139 P.3d at 619 n. 3.

¶ 6 Roughly eight months after the supreme court directed entry of judgment in Jones's favor in the civil suit, a Maricopa County grand jury indicted Jones on nine counts of filing a false instrument in violation of A.R.S. § 39–161, Class 6 felonies, and a single count of fraudulent schemes in violation of A.R.S. § 13–2311, a Class 5 felony. The nine false-filing charges arose from the nine petitions at issue in the civil suit. The fraudulent schemes charge alleged Jones knowingly filed the petitions pursuant to a scheme or artifice to defraud.

¶ 7 Jones moved to dismiss the indictment, arguing the statutes under which he was charged were unconstitutionally vague. After hearing argument, the superior court is-

1. As explained *infra*, much evidence about the nomination petitions at issue here was offered in a prior civil lawsuit. This appeal concerns criminal charges arising from the same petitions at issue in the civil case.

2. The form of petition issued by the Secretary of State that Jones signed denominated as "circulator" the person who provided the verification required by A.R.S. § 16–321(D) (2006). Consis-

tent with that statute, the form of petition that Jones verified stated the following:

I, Russell Jones, hereby verify that I am qualified to register to vote in the County of Yuma, State of Arizona, that each of the names on the petition was signed in my presence on the date indicated; that in my belief, each signer was a qualified elector who resides at the address given as their residence on the date indicated.

sued a minute entry stating simply, "These matters having been under advisement, IT IS ORDERED granting Defendant's Motion to Dismiss."

¶ 8 The State filed a timely notice of appeal. We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2001) and –4032(A)(2001).

## DISCUSSION

### A. Legal Principles.

¶ 9 "We review an order granting a motion to dismiss criminal charges for an abuse of discretion or for the application of an incorrect legal interpretation." *State v. Sanchez*, 192 Ariz. 454, 456, ¶ 4, 967 P.2d 129, 131 (App.1998) (citation omitted). A motion to dismiss tests an indictment's legal sufficiency. *State v. Kerr*, 142 Ariz. 426, 431, 690 P.2d 145, 150 (App.1984); *see* Ariz. R.Crim. P. 16.6(b) ("The court, on motion of the defendant, shall order that a prosecution be dismissed upon finding that the indictment ... is insufficient as a matter of law.").

¶ 10 Although a court may not resolve factual defenses in ruling on a motion to dismiss, *see Kerr*, 142 Ariz. at 431, 690 P.2d at 150, the State does not argue the superior court in this case lacked the power pursuant to Arizona Rule of Criminal Procedure 16.6 to dismiss the charges as a matter of law. As noted, Jones testified at length in the prior civil case about the nomination petitions, including where the signatures were obtained and by whom. In addition to that testimony, the State urges us to accept as true certain statements concerning the petitions Jones made in a later interview conducted by the Maricopa County Sheriff's Office. Jones, who submitted the interview transcript with his motion to dismiss, argues the facts set forth there and in his prior

testimony do not constitute a violation of A.R.S. § 39–161. In these unusual circumstances, we will exercise our discretion to address the legal sufficiency of the State's theory that by falsely verifying that the signatures on the petitions were made "in his presence," Jones violated A.R.S. § 39–161.

### B. Section 39–161 Does Not Apply to a Genuine Instrument That Contains a False Statement.

¶ 11 A candidate in a partisan primary election must submit nomination petitions, each of which must be signed by a "circulator" who must "verify that each of the names on the petition was signed in his presence on the date indicated." A.R.S. §§ 16–321(D) (2006), –315(B) (2006). *See Jenkins v. Hale*, 218 Ariz. 561, 562, ¶ 7, 190 P.3d 175, 176 (2008). Nomination petitions are presumptively valid if they are "circulated, signed and filed." *Id.*, ¶ 8. Nevertheless, a petition is void if it is verified by someone other than one who actually obtained the signatures. *Moreno*, 213 Ariz. at 96, ¶ 2, 139 P.3d at 614.[3]

¶ 12 The indictment alleged that by falsely verifying that the nine petitions were signed in his presence pursuant to A.R.S. § 16–321(D) and filing them with the Secretary of State, Jones violated A.R.S. § 39–161.[4] In the superior court, Jones argued the indictment should be dismissed because A.R.S. § 16–321(D) is unconstitutionally vague as applied to his circumstance. In resolving this matter, we will assume *arguendo* that the statute is not unconstitutionally vague as applied to Jones's conduct, and that Jones's verifications on the nomination petitions at issue were untrue because not all of the signatures on those petitions were made "in his presence," as A.R.S. § 16–321(D) requires. *See Moreno*, 213 Ariz. at 98, ¶ 22, 139 P.3d at 616.[5]

---

3. Jones had submitted enough other signatures to qualify for the primary election ballot without the signatures on the nine petitions that were ruled invalid in the civil case. *Moreno*, 213 Ariz. at 102–103, ¶ 46, 139 P.3d at 620–21.

4. As the State explained in its opening brief on appeal, "Defendant was alleged to have falsely certified as a circulator that the signatures ob-

tained on the Petitions were obtained in accordance with statutory requirements, including that such signatures were obtained in his presence."

5. Although section 16–321(D) does not define "presence" or "in the presence," the statute provides that the required verification is to be made by "[t]he person before whom the signatures

¶ 13 We sought supplemental briefing on whether the false-filing statute, A.R.S. § 39–161, may apply in this case. In relevant part, the statute defines the crime as certifying or offering to be filed "in a public office in this state an instrument [one] knows to be false or forged, which, if genuine, could be filed ... under any law of this state." [6] As presented by the parties' briefs, the issue is whether the statute properly may be applied to an instrument that is genuine but which contains a false statement.[7]

¶ 14 In interpreting a statute, we will give words their ordinary meanings "unless a specific definition is given or the context clearly indicates that a special meaning was intended." *Trustmark Ins. Co. v. Bank One, Ariz., NA,* 202 Ariz. 535, 541, ¶ 27, 48 P.3d 485, 491 (App.2002); *see* A.R.S. § 1–213 (2002). If the words of the statute are unclear, we may look, *inter alia,* "to prior and contemporaneous statutes in construing the meaning" of the law. *State v. Farley,* 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970). Further:

> If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent. If the statutes relate to the same subject or have the same general purpose—that is, statutes which are in pari materia—they should be read in connection with, or should be construed together with other related statutes, as though they constituted one law.... This rule of construction applies even where the statutes were enacted at different times, and contain no reference one to the other, and it is immaterial that they are found in different chapters of the revised statutes.

*Id.*

¶ 15 Although section 39–161 does not define "false" instrument, the statute applies only to a false or forged instrument, "which, if genuine," could be filed or recorded under law. Because we must attribute some meaning to the drafters' use of the phrase "if genuine," *see Pinal Vista Props., L.L.C. v. Turnbull,* 208 Ariz. 188, 190, ¶ 10, 91 P.3d 1031, 1033 (App.2004), we conclude the statute encompasses only instruments that are not genuine because they are "false or forged."

¶ 16 "Genuine" means "possessing the claimed or attributed character, quality, or origin; not counterfeit; authentic; real." *See* Random House Webster's Unabridged Dictionary 798 (Deluxe 2d ed. 2001). More specifically, a *genuine instrument* is "free of forgery or counterfeiting." Black's Law Dictionary 708 (Deluxe 8th ed. 1999). Therefore, a forged instrument may trigger prosecution under the statute because the forgery renders the instrument not genuine. *See generally Lewis,* 32 Ariz. at 195, 256 P. at 1052 (upholding conviction in case of forged instrument).

¶ 17 By the same token, a "false" instrument within the meaning of the statute is not "genuine" because it is a counterfeit document, a document that is not authentic, or a document that pretends to be something other than what it is. *See* Random House Webster's Unabridged Dictionary at 798; Black's Law Dictionary at 708. Our supreme court long ago recited this view of the term in a case interpreting a false pretenses statute, in which the court cited with approval authorities that defined "[f]alse instrument" to mean "[c]ounterfeit; not genuine," and "[f]alse document" to mean "[a] document purporting to be made by a person who did not make the

---

were written on the signature sheet." "Before whom" and "in whose presence" have virtually the same meaning in this context. *See* Random House Webster's Unabridged Dictionary 187–88 (Deluxe 2d ed. 2001) ("before" means, *inter alia,* "in the presence or sight of."). The applicable definition of "presence," meanwhile, is "immediate vicinity; proximity." *Id.* at 1529; *see* Black's Law Dictionary 1221 (Deluxe 8th ed. 2004) (defining "presence" as "[c]lose physical proximity coupled with awareness").

**6.** In full, A.R.S. § 39–161 provides:

> A person who acknowledges, certifies, notarizes, procures or offers to be filed, registered or recorded in a public office in this state an instrument he knows to be false or forged, which, if genuine, could be filed, registered or recorded under any law of this state or the United States, or in compliance with established procedure is guilty of a class 6 felony.

**7.** We may affirm the superior court on a ground other than that on which it ruled. *See State v. Oakley,* 180 Ariz. 34, 36, 881 P.2d 366, 368 (App.1994).

same or a document purporting to be made by some person who did not in fact exist." *Williams v. Territory,* 13 Ariz. 27, 32, 108 P. 243, 244–45 (1910).

¶ 18 Although the State argues that section 39-161 must encompass any instrument that contains a false statement, that interpretation is inconsistent with both the authorities cited above and with the statute's purpose, which is to ensure that an instrument presented for filing be genuine, authentic and not counterfeit. *See Lewis v. State,* 32 Ariz. 182, 188, 256 P. 1048, 1050 (1927) (purpose of

A.R.S. § 39-161 is to ensure that if the public finds "an instrument duly filed, registered, or recorded, they may and must act with the presumption that such an instrument is indeed in existence and is genuine, and govern their affairs accordingly").

¶ 19 Notwithstanding the State's construction, the statute does not address the truth or falsity of any fact stated in an instrument; nor does it refer to "false statement." By contrast, the legislature has enacted dozens of statutes that expressly impose criminal penalties[8] or civil penalties or

8. *See, e.g.,* A.R.S. §§ 3-3113(H) (2002) (person who knowingly makes a false statement in "any application, record, report, plan or other document filed or required to be maintained" by agricultural safety laws is guilty of a Class 2 misdemeanor); 5-409 (2002) (one who "knowingly makes any false statement" in a bingo license application is guilty of a Class 2 misdemeanor); 6-133(B) (1999) (one who "knowingly makes any false statement" in any banking document filed or required by law to be maintained, with intent to deceive banking superintendent, is guilty of a Class 3 felony); 10-1623(F) (Supp. 2008) (person who makes a false statement in connection with law requiring notification to Corporation Commission of a corporate bankruptcy is guilty of a Class 5 felony); 13-2317(B)(4) (Supp. 2002) (person commits money laundering in the second degree by intentionally or knowingly making a false statement in a document filed pursuant to money transmission statutes); 20-481.26(E) (2002) (officer, director or employee of an insurance holding company who willfully and knowingly makes "any false statements, reports or filings" with the intent to deceive is guilty of a Class 6 felony); 23-418(G) (1995) (one who knowingly makes a false statement in application or other document filed or required to be maintained by workplace safety law is guilty of a Class 2 misdemeanor); 23-785 (1995) (Class 6 felony to "knowingly make[] a false statement" to obtain unemployment compensation); 28-2233 (Supp. 2008) (execution of application for commercial fleet registration "is subject to penalties of perjury for false statements"); 28-2531(B)(5) (2004) (one who "[k]nowingly makes a false statement" in an application for vehicle registration is guilty of a Class 2 misdemeanor); 28-3478 (2004) (Class 2 misdemeanor to "[k]nowingly make a false statement" in a driver's license application); 28-5707(A)(2) (2004) (one who "[k]nowingly makes a false statement in a report" in connection with a claim for refund of interstate user fuel tax is guilty of a Class 2 misdemeanor); 32-355(A)(5) (2008) (Class 1 misdemeanor to "[k]nowingly make a false statement" on a barber's license application); 32-574(A)(4) (2008) (one who knowingly makes a false statement on a cosmetology license application is guilty of a Class 1

misdemeanor); 33-420(E) (2007) (one who knowingly records a lis pendens that is "forged, groundless, contains a material misstatement or false claim" is guilty of a Class 1 misdemeanor); 36-344(A)(1) (2009) (person who "[k]nowingly makes a false statement in a certificate or record required to be filed" pursuant to vital records statutes is guilty of Class 1 misdemeanor); 36-515(B) (2009) (person "who knowingly makes a false statement of a material fact" intending to cause another to be confined for mental health treatment/evaluation is guilty of Class 1 misdemeanor); 37-246 (2003) (Class 2 misdemeanor to knowingly make a false statement in a form filed with State Land Department of the details of a sale of sand, gravel, stone or other natural product from land purchased from state); 40-303(C)(2) (2001) (Class 4 felony to knowingly file with Corporation Commission "any false statement or representation" that may tend to influence the commission in authorizing the issue of any stock, bond or note); 41-607 (2004) (one "who knowingly makes a false statement under oath" of a material fact in connection with veterans services is guilty of a Class 5 felony); 41-1237(A) (2004) (one who knowingly files lobbying registration document "that contains any materially false statement or material omission" is guilty of a Class 1 misdemeanor); 41-2191 (Supp. 2008) (one who knowingly files a document with the manufactured home recovery fund "which is false or untrue or contains any material misstatement of fact" is guilty of a Class 2 misdemeanor); 41-2814(J) (Supp. 2008) (one who makes a false statement in an application for employment with the Department of Juvenile Corrections is guilty of a Class 3 misdemeanor); 42-1127(B)(2) (Supp. 2008) (crime to present a tax "return, affidavit, claim or other document which is fraudulent or is false as to any material matter"); 42-11128(F) (2006) (one commits a Class 6 felony by knowingly making a false statement in any document submitted to tax authorities in support of a claim for exemption from personal property taxes for property in transit); 45-1607 (2003) (knowingly making a false statement in an application for license to conduct weather control or cloud modification operations is Class 3 misdemeanor); 46-215(A) (2005) (one

consequences[9] for the filing of documents that contain false statements. That the legislature expressly imposed consequences for the filing of documents containing false statements in the many statutes cited in the notes but did not specifically address instruments containing false statements in section 39–161 is strong evidence that it did not intend the latter statute to encompass an instrument that contains a false statement that does not cause the instrument to be something other than genuine.

¶ 20 In other statutes, the legislature likewise has distinguished a false instrument from one that contains false information. Without expressing any view on the applicability of A.R.S. § 13–2002(A)(3) (2001) to the facts at issue here, we note that in that provision, the legislature specified that one commits forgery by "[o]ffer[ing] or present[ing] ... a forged instrument or one *that contains false information.*" (Emphasis added).[10] We find it significant that section 39–161 simply refers to a "false or forged" document, rather than, as in the provision just quoted, a "forged instrument or one that contains false information." Cf. A.R.S. § 13–2317(B)(8) (Supp.2008) (one may commit money laundering by presenting "a forged instrument, a falsely altered or completed written instrument or a written instrument that contains any materially false personal identifying information"); A.R.S. § 13–2407(A)(1) (2001) (separately addressing, in context of crime of tampering with public record, "mak[ing] or complet[ing] a written instrument, knowing that it has been falsely made" and "mak[ing] a false entry in a written instrument").

¶ 21 The State does not contend the nomination petitions Jones verified contained forged signatures or that the petitions were not what they appeared to be.[11] Instead, the State's theory is that Jones violated A.R.S. § 39–161 simply by verifying that each of the signatures on the petitions had been signed in his presence. The State's argument would render it a felony to certify or offer for filing any instrument to be filed or recorded, know-

---

· commits welfare fraud, a Class 6 felony, by knowingly obtaining assistance "by means of a false statement or representation").

**9.** *See, e.g.,* A.R.S. §§ 20–1631(D)(3)(c)(iv) (Supp. 2008) (insurer may cancel policy if insured is convicted of making false statements in driver's license application); 28–675(B)(6)(b) (Supp. 2008) (person shall not operate a motor vehicle if he/she knowingly made a false statement to obtain a driver's license); 28–8347(1) (1998) (aviation director may impose civil penalty against "person who willfully makes or gives under oath or affirmation a false statement" regarding aircraft); 29–314 (1998) (one who suffers a loss by reliance on a false statement contained in a certificate of limited partnership may sue to recover damages); 32–353(6) (2008) (barber may be disciplined for making false statements to state board); 32–572(A)(7) (2008) (cosmetology board may discipline licensee or applicant who makes "oral or written false statements to the board"); 32–1263(C), (D)(4) (Supp. 2008) (State Dental Board may impose discipline when dentist knowingly files "any application, renewal or other document that contains false information"); 32–3631(A)(1) (2008) (State Board of Appraisal may discipline appraiser for "knowingly making a false statement [or] submitting false information" in an application for a license); 45–528(A)(1) (2003) (groundwater withdrawal permit may be revoked upon finding of a "material false statement" in permit application); 45–1046(A)(1) (2003) (water exchange permit may be revoked upon a finding of a "false statement in regard to a material issue in an application" for such permit).

**10.** The forgery chapter of our criminal code defines a forged instrument as one that has been "falsely made, completed or altered." A.R.S. § 13–2001(8) (Supp. 2008). "Falsely alter[ing] a written instrument" means "to change a ... written instrument ... by means of counterfeiting, washing, erasure, obliteration ... so that the altered instrument falsely appears or purports to be in all respects an authentic creation of its ostensible maker or authorized by him." A.R.S. § 13–2001(5); *see* A.R.S. § 13–2001(6) (similarly defining "[f]alsely complet[ing]" an instrument), (7) (similarly defining "[f]alsely mak[ing]" an instrument); A.R.S. § 26–1123 (2000) (in Code of Military Justice, one who, intending to defraud, "falsely makes or alters any signature to, or any part of, any writing which would, if genuine, apparently impose a legal liability" is guilty of forgery).

**11.** Nor does the State argue that section 39–161 is implicated because the false verifications rendered the petitions void. *See Brousseau v. Fitzgerald,* 138 Ariz. 453, 456, 675 P.2d 713, 716 (1984). A document that is void is "[o]f no legal effect; null." Black's Law Dictionary 1604 (Deluxe 8th ed. 1999). While the nomination petitions that Jones falsely verified were of no legal effect, we cannot say they were counterfeit, not authentic, not real or otherwise not genuine within the meaning of section 39–161.

ing it contains a false statement, without regard to the materiality of the falsity or the significance of the filing, and in the absence of any intent to defraud and any requirement that the certification be sworn or expressly made subject to the laws of perjury. We of course do not condone any false certification or the filing of any instrument knowing it contains a falsehood. Nonetheless, not only is the State's construction of the statute not supported by the context of the act or other indications of legislative intent, the nearly unlimited breadth of the statute urged by the State gives us great pause.

¶ 22 The State contends that *State v. Royer*, 150 Ariz. 501, 724 P.2d 587 (App. 1986), supports its argument that A.R.S. § 39–161 encompasses an instrument that is genuine but contains a false statement. At issue in *Royer* was a real estate license application in which the applicant incorrectly stated he had not been charged with a criminal offense. *Id.* at 502, 724 P.2d at 588. The applicant argued the superior court erred by failing to instruct the jury on mistake or ignorance. *Id.* at 505, 724 P.2d at 591. In affirming the conviction, the court was not asked to and did not address the issue presented here, namely, whether a false statement on an instrument to be filed renders the instrument a "false" instrument. *See id.*[12]

¶ 23 The State also contends that *State v. Edgar*, 124 Ariz. 472, 605 P.2d 450 (1979), compels the conclusion that section 39–161 applies to an instrument that contains a false statement. We do not understand *Edgar* to support the State's argument. At issue in

that case was a mortgage signed by a minor using a fictitious name. *Id.* at 473, 605 P.2d at 451. The real estate salesman who presented the mortgage for filing was convicted of violating section 39–161. *Id.* On appeal, he argued the mortgage was not "false" but only contained false information. *Id.* at 474, 605 P.2d at 452. The supreme court did not consider the argument because it concluded that the fictitious signature on the mortgage rendered the instrument "false" within the meaning of the statute. *Id.*

¶ 24 The State also cites a pair of Attorney General Opinions in support of its contention that Jones may be prosecuted under A.R.S. § 39–161 for falsely verifying the nomination petitions. Neither opinion directly addresses the issue before us, however. *See* Op. Ariz. Att'y. Gen. I99–009 (referral for prosecution of one who falsely swears to the accuracy of a campaign finance report); Op. Ariz. Att'y. Gen. I78–167 (application for security guard registration is an "instrument" within meaning of A.R.S. § 39–161 so that one who certifies such an application that contains a false statement may be liable).[13]

## CONCLUSION

¶ 25 In directing the dismissal of the civil petition-forgery case against Jones, the supreme court emphasized that its decision was "not intended to diminish the importance of the integrity of the nomination process." *Moreno*, 213 Ariz. at 103, ¶ 47, 139 P.3d at 621. As the court stated in that case, because falsely certifying a petition is a "serious matter," the legislature may choose to

---

12. Although it has been amended since it was enacted, A.R.S. § 39–161 was copied from California Penal Code § 115. *Lewis*, 32 Ariz. at 186, 256 P. at 1049. While we have found no California case that specifically addresses whether an instrument may be "false" within the meaning of the statute merely because it contains a false statement, a handful of California cases have affirmed convictions for filing instruments that contain false statements without discussing whether a false statement in a document renders the document "false" within the meaning of the statute. *See, e.g., People v. Powers*, 117 Cal. App.4th 291, 11 Cal.Rptr.3d 619 (2004) (false fishing activity report); *People v. Tate*, 55 Cal. App.4th 663, 64 Cal.Rptr.2d 206 (1997) (false community service report form). Because these

cases, like Royer, did not address the issue presented here, we do not find them persuasive. In any event, we may choose not to accept an interpretation of a statute of a sister state rendered by a court of that state after enactment of the statute in Arizona. *Lewis*, 32 Ariz. at 186, 256 P. at 1049–50.

13. The latter opinion assumed but did not address whether the application fell within the statute because it contained a false statement. In any event, "Attorney General Opinions are advisory only and are not binding on the court." *Marston's Inc. v. Roman Catholic Church of Phoenix*, 132 Ariz. 90, 94, 644 P.2d 244, 248 (1982).

impose other sanctions when a candidate falsely affirms that petition signatures were obtained in his presence. *Id.* We likewise do not intend this decision to undermine the integrity of the election process. We decide today only that A.R.S. § 39–161 is not violated by the false verification of a nomination petition that otherwise is genuine. Because the State does not contend the nomination petitions at issue were not genuine, but instead prosecuted Jones on the theory that he violated section 39–161 only by falsely verifying petitions that were not signed in his presence, we affirm the superior court's judgment dismissing the indictment.[14]

CONCURRING: MICHAEL J. BROWN and PATRICK IRVINE, Judges.

**14.** The tenth count of the indictment charged Jones with engaging in a scheme or artifice to defraud by "ma[king] or us[ing] ... a false writing or document knowing it contained a false or fictitious or fraudulent statement or entry," all in connection with state business, a violation of A.R.S. § 13–2311. We note that, by contrast to

A.R.S. § 39–161, A.R.S. § 13–2311 specifically refers to the use of a document containing a "false ... statement or entry." Although the superior court dismissed this charge along with the false-filing charges, the State on appeal does not argue the dismissal was improper or should be reversed.