Filed 12/22/23  P. v. Luna CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | G062297 |
| v. | (Super. Ct. No. 20CF3368) |
| MOSES LUNA, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a pretrial order of the Superior Court of Orange County, Jonathan S. Fish, Judge.  Affirmed.

Todd Spitzer, District Attorney, and Keith Burke, Deputy District Attorney, for Plaintiff and Appellant.

Douglas P. Luna Vining and Moses Luna for Defendant and Respondent.

This appeal turns on the applicability of the *Williamson* rule, which precludes criminal prosecution under a general statute if there is a more specific statute that applies to the defendant's conduct. (*In re Williamson* (1954) 43 Cal.2d 651 (*Williamson*).) The trial court invoked the rule to dismiss multiple counts of felony insurance fraud that were filed against respondent Moses Luna under Penal Code section 550. The trial court determined the charges were improper because a misdemeanor statute in the Labor Code – section 139.32 – covers the specific type of criminal conduct Luna was accused of engaging in, specifically, failing to disclose a potential conflict of interest arising from his representation of workers' compensation claimants. Appellant, the District Attorney of Orange County, challenges that ruling, but like the trial court, we find the *Williamson* rule applies here. We therefore affirm the dismissal order.

## FACTUAL AND PROCEDURAL BACKGROUND

Luna has been practicing workers' compensation law in California for roughly half a century. On May 12, 2021, the district attorney charged him in an amended complaint with 22 counts of felony insurance fraud pursuant to Penal Code section 550, subdivision (b)(3) (Penal Code section 550(b)(3)). It was also alleged as an enhancement that Luna engaged in a pattern of fraudulent conduct involving the taking of more than $100,000. (Pen. Code, § 186.11, subd. (a)(3).)

At the preliminary hearing, the district attorney presented evidence Luna opened a side business called Adelante Interpreters in 2011. Although Luna controlled and ran the business, he did not mention that on the incorporation papers. Instead, he listed his daughters as its acting officers. When Luna's legal clients needed interpreter services in connection with their workers' compensation claims, he invariably enlisted Adelante for those services. Adelante then made insurance claims for the cost of those services. All told, it received payments totaling over $100,000 from 22 different insurance carriers between 2016 and 2020. The parties stipulated those benefits would not have been paid had the carriers known of Luna's interest in Adelante.

2

After Luna was bound over for trial, the district attorney filed an information that mirrored the amended complaint. Luna then filed a Penal Code section 995 motion to dismiss the information. Luna argued the *Williamson* rule barred his felony prosecution under Penal Code section 550(b)(3) because his alleged misconduct is specifically addressed in Labor Code section 139.32, which, inter alia, makes it a misdemeanor for workers' compensation attorneys to refer clients to a business in which they have a financial interest.[1] Luna also argued dismissal was warranted because section 139.32 is unconstitutionally vague, and his conduct falls within the safe harbor provisions of the statute.

At the motion hearing, the district attorney asserted the *Williamson* rule did not apply because Penal Code section 550(b)(3) contains an element – the intent to defraud – that is absent from section 139.32. The trial court acknowledged that distinction. However, the court found it significant section 139.32 specifically addresses Luna's alleged wrongdoing, and the statute served as a springboard for his felony prosecution. In fact, it was undisputed the felony charges hinged on Luna's violation of section 139.32. Relying on its "common sense," the trial court also determined that when section 139.32 is violated, the perpetrator will typically harbor fraudulent intent. Therefore, a violation of section 139.32 will commonly result in a violation of Penal Code section 550(b)(3). For all those reasons, the court concluded the *Williamson* rule precluded Luna's felony prosecution under the latter statute.

Although Luna prevailed on that issue, the trial court rejected his vagueness argument, and it found his safe harbor argument premature because it presented factual issues that needed to be fleshed out at trial. The court then amended the information by interlineation to change all 22 of the felony charges to misdemeanors under section

---

[1] Unless noted otherwise, all further statutory references are to the Labor Code

139.32. However, upon reconsideration, and at the parties' request, the court vacated its amendments and dismissed the information altogether.

DISCUSSION

*The Williamson Rule*

The district attorney contends the trial court erred by dismissing the information pursuant to the *Williamson* rule. Exercising de novo review on that issue (*In re Charles G.* (2017) 14 Cal.App.5th 945, 949), we disagree and affirm the trial court's ruling.

Generally, when the defendant's conduct violates more than one statute, prosecutors have the discretion to decide which statute to charge under. (*People v. Molina* (2004) 120 Cal.App.4th 507, 517-518.) However, that discretion is not unlimited. "Under the *Williamson* rule, if a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute. In effect, the special statute is interpreted as creating an exception to the general statute for conduct that otherwise could be prosecuted under either statute. [Citation.]" (*People v. Murphy* (2011) 52 Cal.4th 81, 86.)

Sometimes described as a rule of preemption (*People v. Watson* (1981) 30 Cal.3d 290, 295-296), "the *Williamson* rule applies when (1) 'each element of the general statute corresponds to an element on the face of the special statute' or (2) when 'it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute.' [Citation.]" (*People v. Murphy, supra,* 52 Cal.4th at p. 86.) In applying these criteria, we must remember the rule is "'designed to ascertain and carry out legislative intent. The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of

4

legislative intent and "requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision. . . ." [Citation.]' [Citation.]" (*Ibid*.)

The general statute at issue here is Penal Code section 550(b)(3), which makes it unlawful for any person to "[c]onceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled." Enacted in 1994, this provision was intended to expand the scope of Penal Code section 550 beyond the various types of insurance fraud that were already listed in the statute, such as automobile and health insurance fraud. (Legis. Counsel's Dig., Sen. Bill No. 833, Stats. 1994, ch. 1008, § 3.1.) The statute requires the intent to defraud (*People v. Blick* (2007) 153 Cal.App.4th 759, 774) and is punishable as either a felony or a misdemeanor (Pen. Code, § 550, subd. (c)(3)).

The special statute at issue is section 139.32. Under subdivision (b) of the statute, all interested parties in the workers' compensation system, including attorneys representing injured employees, are required to disclose any financial interest they have in an entity that provides services to an employee. (§ 139.32, subds. (b) & (a)(2)(D).) The statute defines "services" to include interpreter services, and it defines a "financial interest" to include an ownership stake or any other type of arrangement under which an interested party receives a financial benefit for the services rendered. (*Id*., subds. (a)(3)(D) & (a)(1)(A).)

In addition to this disclosure requirement, section 139.32 contains a broad referral prohibition in subdivision (c). That subdivision makes it unlawful for an interested party to refer a claimant "for services provided by another entity, or to use services provided by another entity, if the other entity will be paid for those services pursuant to [the workers' compensation laws] and the interested party has a financial interest in the other entity." (§ 139.32, subd. (c), hereafter § 139.32(c)).

5

Section 139.32 also makes it unlawful for a business to submit an insurance claim for services furnished pursuant to an illegal referral, or for an insurance company to pay any such claim. (§ 139.32, subds. (e), (f).) Unless one of the statute's safe harbor exceptions applies (§ 139.32, subd. (i)), a violation of its provisions constitutes a misdemeanor offense (*id*., subd. (g)(1)).[2]

Section 139.32 has not been cited in any reported cases since it was enacted in 2012. However, for purposes of this appeal, the parties agree the statute describes crimes of general intent that do not require the specific intent to defraud. (See generally *People v. Hood* (1969) 1 Cal.3d 444, 456–457 [general intent crimes merely set forth the prohibited act without reference to an intent to do any further act or achieve a future consequence].) Thus, for purposes of the *Williamson* rule, the elements of section 139.32 do not correspond to the elements of Penal Code section 550(b)(3).

Some cases have held the presence of an additional intent requirement in the general statute is sufficient to render the *Williamson* rule inapt. (See, e.g., *People v. Powers* (2004) 117 Cal.App.4th 291, 299 [defendant could be prosecuted under general statute because it required a more egregious mental state than the special statute].) However, our Supreme Court has cautioned, "'It is not correct to assume that the [*Williamson*] rule is inapplicable whenever the general statute contains an element not found within the four corners of the "special" law. Rather, the courts must consider the *context* in which the statutes are placed. If it appears from the entire context that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute.'" (*People v. Murphy, supra,* 52 Cal.4th at p. 87, quoting *People v. Jenkins* (1980) 28 Cal.3d 494, 502.)

---

[2] The full text of section 139.32 and Penal Code section 550 – each of which spans several pages – is set forth in the appendix to this opinion.

6

It is undisputed a violation of section 139.32 will not necessarily trigger a violation of Penal Code section 550(b)(3), so the question comes down to whether a violation of the former statute will commonly – meaning "often or usually" (Cambridge Dict. Online (2023) https://dictionary.cambridge.org/us/dictionary/english/commonly) – result in a violation of the latter statute. That depends on whether violators of section of 139.32 would commonly harbor the intent to defraud required under Penal Code section 550(b)(3), which is the sole differentiating element between the two statutes.

In arguing they would not, the district attorney contends it is "entirely plausible that an attorney handling workers' compensation cases could make an illegal referral because they were unaware of section 139.32's prohibition on such referrals, particularly in the case of inexperienced practitioners who are new or who do not regularly handle workers' compensation cases. It is also plausible that an experienced workers' compensation attorney could honestly but mistakenly believe that a particular referral fell within an exception to section 139.32's prohibitions."

We agree with the district attorney that those scenarios are "plausible." However, the fact they may transpire from time to time is insufficient, in and of itself, to find the *Williamson* rule inapt in this case. (See *People v. Murphy, supra,* 52 Cal.4th at p. 1224 [special statute controlled even though it could be violated without also violating a more general statute]; *People v. Ruster* (1976) 16 Cal.3d 690, 698-699 [same], disapproved on other grounds in *People v. Jenkins, supra,* 28 Cal.3d at p. 503, fn. 9.) "Consideration must be given to the entire context surrounding the 'special' statute to determine the true overlap of the statutes and to ascertain the intent of the Legislature." (*People v. Jenkins, supra,* 28 Cal.3d at p. 503.)

Section 139.32 was designed to expose potential conflicts of interest in the workers' compensation system. The statute does not merely pertain to the Luna's case in some sort of tangential or peripheral way. Rather, it targets the *exact type* of illegal conduct he allegedly engaged in, i.e., failing to disclose a financial interest in a service he

7

had his clients use to facilitate their workers' compensation claims. As such, section 139.32 is an indispensable component of the prosecution's case. Although Luna was charged with violating Penal Code section 550(b)(3), the district attorney concedes his prosecution is predicated on a violation of section 139.32 and that absent that law, Luna could not be prosecuted for violating the more general Penal Code provision. In that sense, the two statutes not only overlap; they are inextricably interwoven with each other in this case.

In attempting to downplay the significance of this fact, the district attorney draws our attention to *People v. Sanchez* (1998) 60 Cal.App.4th 1490. In that case, this court found a special statute prohibiting the solicitation of drug sales did not preclude the defendant's prosecution under general statutes making attempted drug possession a crime. In so finding, we did observe that the defendant's conduct would not have been illegal before the special statute was enacted. (*Id.* at p. 1497.) But unlike our case, the statutes in question did not meaningfully overlap because the special one targeted one thing, sales, and the general one targeted another, possession. (*Id.* at p. 1494 [noting the defendant was charged under the general statutes with attempting to commit an offense that was *not* prohibited by the special statute].)

Here, not only is the special statute critical to prosecuting the general statute, the punishment provisions applicable to the special statute are specifically tailored to Luna's alleged wrongdoing in his role as a workers' compensation attorney. In addition to making the concealment of a financial interest punishable as a misdemeanor, section 139.32 contemplates State Bar review for possible disciplinary action against offending attorneys, and it authorizes civil penalties up to $15,000 for each violation of the statute. (§ 139.32, subd. (g).) This shows the Legislature had people like Luna in mind when it enacted section 139.32. (See generally *People v. Haydon* (1951) 106 Cal.App.2d 105, 107-108 [considering the penalty provisions of respective statutes in determining whether the *Williamson* rule applied].)

8

The district attorney fears that if we apply the *Williamson* rule in this case, it will effectively preempt other anti-referral statutes, such as section 3215 and Insurance Code section 750.[3] However, in this case, we are only comparing Penal Code section 550(b)(3) and section 139.32. Because our decision hinges on the wording of those particular statutes, nothing we say has any bearing on whether the *Williamson* rule would apply in cases involving other statutes.

As far as this case is concerned, we believe the rule precludes the prosecution from charging Luna pursuant to Penal Code section 550(b)(3) because his culpability under that general statute hinges on whether he violated section 139.32, a special statute which fits Luna's alleged misconduct to a tee. (*People v. Duran* (2004) 124 Cal.App.4th 666, 672 [special statute controlled because it was geared toward the very sort of criminal conduct the defendant was accused of committing].) Does that mean every violation of section 139.32 will trigger Penal Code section 550(b)(3)? Of course not. But we are convinced that – just as the district attorney has alleged in this very case – a violation of section 139.32 will often result in a violation Penal Code section 550(b)(3). Therefore, we conclude the *Williamson* rule applies, and the trial court properly dismissed the felony charges against Luna.

Although the district attorney insists Luna deserves to be prosecuted as a felon for allegedly acting with fraudulent intent, we believe this conclusion comports with the legislative intent behind section 139.32(c). However, if that is not the case, the

---

[3]     Section 3215 provides, "Except as otherwise permitted by law, any person acting individually or through his or her employees or agents, who offers, delivers, receives, or accepts any rebate, refund, commission, preference, patronage, dividend, discount or other consideration, whether in the form of money or otherwise, as compensation or inducement for referring clients or patients to perform or obtain services or benefits pursuant to this division, is guilty of a crime."

         Insurance Code section 750 provides: "(a) Except as provided in Section 750.5, any person acting individually or through his or her employees or agents, who engages in the practice of processing, presenting, or negotiating claims, including claims under policies of insurance, and who offers, delivers, receives, or accepts any rebate, refund, commission, or other consideration, whether in the form of money or otherwise, as compensation or inducement to or from any person for the referral or procurement of clients, cases, patients, or customers, is guilty of a crime."

9

Legislature can easily say so by amending the statute to clarify that a violation of its provisions does not preclude the applicability of any other provision of law. (See *Finn v. Superior Court* (1984) 156 Cal.App.3d 268, 271-272.) The Legislature has utilized this procedure in response to past judicial decisions, and there is no reason it cannot do so in response to this case, if need be. (*Ibid.*) "In the meantime, it is more important for our system of justice to observe well-founded and established rules, than to create false exceptions in order to apply an apparently more appropriate penalty" to an alleged wrongdoer. (*Id.* at p. 272.)

In light of our conclusion that Luna cannot be charged under Penal Code section 550(b)(3), it is expected the prosecution will charge him with violating section 139.32. Therefore, we will address Luna's arguments respecting that prospect. (See *People v. Ruster, supra*, 16 Cal.3d at p. 699 [addressing potential issues for retrial following a reversal based on the *Williamson* rule].)

*Vagueness Challenge*

Luna's vagueness argument targets section 139.32, subdivision (b), which requires interested parties to "disclose any financial interest in any entity providing services." (§ 139.32, subd. (b).) Luna does not dispute that he is an interested party and that he has a financial interest in the service provider Adelante. However, he contends the term "disclose" is unduly vague because there is nothing in section 139.32 that explains how, when or to whom he must disclose that interest. The contention is well taken.[4]

To satisfy due process, a statute must give fair notice of the conduct proscribed and be sufficiently definite to prevent arbitrary and discriminatory enforcement. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1106–1107.) "'[A]

---

[4] In making his vagueness claim, Luna relies on and incorporates the arguments he made in his Penal Code section 995 motion to dismiss in the trial court. Conceding the propriety of this tactic, the district attorney has briefed all of Luna's arguments on their merits.

10

statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' [Citation.]" (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116.)

The district attorney maintains section 139.32, subdivision (b) is sufficiently clear to pass constitutional muster. Even though the statute does not say so, he argues it simply requires attorneys to disclose their financial interest to whichever insurance company they are seeking reimbursement from when they submit a claim for the cost of services provided to their client.

Alternatively, the district attorney asserts subdivision (b) is severable from the rest of section 139.32, and therefore if that subdivision is unduly vague, Luna can still be prosecuted under the statute. This is so, the district attorney contends, because in addition to violating subdivision (b)'s disclosure requirement, Luna also violated other subdivisions of the statute, such as subdivision (c), which prohibits interested parties from referring clients to or using service providers in which they have a financial interest.

On the core vagueness question, we agree with Luna that subdivision (b) of section 139.32 is unconstitutional. That conclusion becomes apparent when we compare that provision to other disclosure statutes, such as section 139.3, which is designed to root out conflicts of interest arising in the context of medical referrals by attending physicians. To that end, section 139.3 requires physicians to disclose their financial interest in any organization they refer patients to or seek consultation from. (§ 139.3, subd. (e).) However, unlike section 139.32, section 139.3 does not simply say that disclosure is required. Instead, it specifically provides that disclosure must be made "to the patient . . . in writing at the time of the referral." (*Ibid*.) In *Banerjee v. Superior Court* (2021) 69 Cal.App.5th 1093, the court found this language satisfied due process because it provided reasonable notice of how, when and to whom disclosure must be made. (Id. at pp. 1115-1117.)

11

In comparison, the disclosure requirement in section 139.32, subdivision (b) is entirely devoid of any such information. While the district attorney claims insurance companies were the intended beneficiaries of the statute, there surely could be situations in workers' compensation cases where the disclosure of a financial interest to the attorney's own client might also be beneficial, such as when the attorney refers his client to a health care provider in which he has a financial interest.

Yet, the statute does not provide any guidance as to whom disclosure must be made. Nor does it shed any light on when or how the requisite disclosure must be proffered. These shortcomings make the disclosure requirement both difficult to obey from a defense perspective, and difficult to enforce from a prosecutorial perspective. Since the requirement is susceptible of multiple interpretations and fails to provide reasonable notice of what it entails, we conclude it is too vague to enforce against Luna in this case.

However, Luna agrees with the district attorney that requirement is severable from the rest of section 139.32, and so do we. Indeed, it is clear the disclosure requirement in subdivision (b) can be excised without affecting the wording or coherence of the remaining provisions, which are separate and enforceable in their own right. Therefore, while we strike down subdivision (b) of section 139.32 on vagueness grounds, we see no reason to invalidate the remaining portions of the statute. (See generally *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 270-271 [even if some provisions of a statute are deemed invalid, the remaining provisions may be enforced if they are independent and severable from the tainted provisions].)

*Safe Harbor Provisions*

Lastly, Luna contends his alleged wrongdoing falls within the safe harbor exceptions set forth in section 139.32. Like the trial court, we believe this argument is premature because it lacks evidentiary support at this stage of the proceedings.

12

Subdivision (i) of section 139.32 states, "The prohibitions described in this section do not apply to any of the following:  [¶] (1) Services performed by . . . employees of an interested party in the course of that employment."  Luna takes that to mean that even though he referred his clients to Adelante, a service provider in which he had a financial interest, that was not a crime because the people who provided the services were his employees.

But at the preliminary hearing, the evidence indicated the people who provided the interpreting services for Luna's clients were independent contractors, not Luna's employees.  They worked on an as-needed basis and were paid per client from Adelante.  Then Adelante would bill the client's employer's workers' compensation carrier for the cost of the services rendered.  This arrangement was consistent with Luna's general practice.  In fact, it appears he treated most of his workers as independent contractors, as opposed to employees.  Therefore, as the record stands, Luna cannot avail himself of the safe harbors in section 139.32.

## DISPOSITION

The trial court's order dismissing the felony charges against Luna is affirmed.  If the district attorney files misdemeanor charges against Luna under section 139.32, he cannot rely on subdivision (b) of the statute, which is void for vagueness.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


SANCHEZ, J.


13

APPENDIX

*Full Text of Penal Code section 550*

(a) It is unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following:

(1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance.

(2) Knowingly present multiple claims for the same loss or injury, including presentation of multiple claims to more than one insurer, with an intent to defraud.

(3) Knowingly cause or participate in a vehicular collision, or any other vehicular accident, for the purpose of presenting any false or fraudulent claim.

(4) Knowingly present a false or fraudulent claim for the payments of a loss for theft, destruction, damage, or conversion of a motor vehicle, a motor vehicle part, or contents of a motor vehicle.

(5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim.

(6) Knowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit.

(7) Knowingly submit a claim for a health care benefit that was not used by, or on behalf of, the claimant.

(8) Knowingly present multiple claims for payment of the same health care benefit with an intent to defraud.

(9) Knowingly present for payment any undercharges for health care benefits on behalf of a specific claimant unless any known overcharges for health care benefits for that claimant are presented for reconciliation at that same time.

(10) For purposes of paragraphs (6) to (9), inclusive, a claim or a claim for payment of a health care benefit also means a claim or claim for payment submitted by or

14

on the behalf of a provider of any workers' compensation health benefits under the Labor Code.

(b) It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:

(1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(2) Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(3) Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.

(4) Prepare or make any written or oral statement, intended to be presented to any insurer or producer for the purpose of obtaining a motor vehicle insurance policy, that the person to be the insured resides or is domiciled in this state when, in fact, that person resides or is domiciled in a state other than this state.

(c)(1) Every person who violates paragraph (1), (2), (3), (4), or (5) of subdivision (a) is guilty of a felony punishable by imprisonment pursuant to subdivision (h) of section 1170 for two, three, or five years, and by a fine not exceeding fifty thousand dollars ($50,000), or double the amount of the fraud, whichever is greater.

(2) Every person who violates paragraph (6), (7), (8), or (9) of subdivision (a) is guilty of a public offense.

(A) When the claim or amount at issue exceeds nine hundred fifty dollars ($950), the offense is punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or five years, or by a fine not exceeding fifty thousand dollars ($50,000) or double the amount of the fraud, whichever is greater, or by both that imprisonment and fine, or by imprisonment in a county jail not to exceed one year, by a fine of not more than ten thousand dollars ($10,000), or by both that imprisonment and fine.

(B) When the claim or amount at issue is nine hundred fifty dollars ($950) or less, the offense is punishable by imprisonment in a county jail not to exceed six months, or by a fine of not more than one thousand dollars ($1,000), or by both that imprisonment and fine, unless the aggregate amount of the claims or amount at issue exceeds nine hundred fifty dollars ($950) in any 12-consecutive-month period, in which case the claims or amounts may be charged as in subparagraph (A).

(3) Every person who violates paragraph (1), (2), (3), or (4) of subdivision (b) shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or five years, or by a fine not exceeding fifty thousand dollars ($50,000) or double the amount of the fraud, whichever is greater, or by both that imprisonment and fine, or by imprisonment in a county jail not to exceed one year, or by a fine of not more than ten thousand dollars ($10,000), or by both that imprisonment and fine.

(4) Restitution shall be ordered for a person convicted of violating this section, including restitution for any medical evaluation or treatment services obtained or provided. The court shall determine the amount of restitution and the person or persons to whom the restitution shall be paid.

(d) Notwithstanding any other provision of law, probation shall not be granted to, nor shall the execution or imposition of a sentence be suspended for, any adult person

convicted of felony violations of this section who previously has been convicted of felony violations of this section or Section 548, or of Section 1871.4 of the Insurance Code, or former Section 556 of the Insurance Code, or former Section 1871.1 of the Insurance Code as an adult under charges separately brought and tried two or more times. The existence of any fact that would make a person ineligible for probation under this subdivision shall be alleged in the information or indictment, and either admitted by the defendant in an open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury.

Except when the existence of the fact was not admitted or found to be true or the court finds that a prior felony conviction was invalid, the court shall not strike or dismiss any prior felony convictions alleged in the information or indictment.

This subdivision does not prohibit the adjournment of criminal proceedings pursuant to Division 3 (commencing with Section 3000) or Division 6 (commencing with Section 6000) of the Welfare and Institutions Code.

(e) Except as otherwise provided in subdivision (f), any person who violates subdivision (a) or (b) and who has a prior felony conviction of an offense set forth in either subdivision (a) or (b), in Section 548, in Section 1871.4 of the Insurance Code, in former Section 556 of the Insurance Code, or in former Section 1871.1 of the Insurance Code shall receive a two-year enhancement for each prior felony conviction in addition to the sentence provided in subdivision (c). The existence of any fact that would subject a person to a penalty enhancement shall be alleged in the information or indictment and either admitted by the defendant in open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury. Any person who violates this

17

section shall be subject to appropriate orders of restitution pursuant to Section 13967 of the Government Code.

(f) Any person who violates paragraph (3) of subdivision (a) and who has two prior felony convictions for a violation of paragraph (3) of subdivision (a) shall receive a five-year enhancement in addition to the sentence provided in subdivision (c). The existence of any fact that would subject a person to a penalty enhancement shall be alleged in the information or indictment and either admitted by the defendant in open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury.

(g) Except as otherwise provided in Section 12022.7, any person who violates paragraph (3) of subdivision (a) shall receive a two-year enhancement for each person other than an accomplice who suffers serious bodily injury resulting from the vehicular collision or accident in a violation of paragraph (3) of subdivision (a).

(h) This section shall not be construed to preclude the applicability of any other provision of criminal law or equitable remedy that applies or may apply to any act committed or alleged to have been committed by a person.

(i) Any fine imposed pursuant to this section shall be doubled if the offense was committed in connection with any claim pursuant to any automobile insurance policy in an auto insurance fraud crisis area designated by the Insurance Commissioner pursuant to Article 4.6 (commencing with Section 1874.90) of Chapter 12 of Part 2 of Division 1 of the Insurance Code.

*Full Text of Labor Code section 139.32*

(a) For the purpose of this section, the following definitions apply:

(1) "Financial interest in another entity" means, subject to subdivision (h), either of the following:

(A) Any type of ownership, interest, debt, loan, lease, compensation, remuneration, discount, rebate, refund, dividend, distribution, subsidy, or other form of

18

direct or indirect payment, whether in money or otherwise, between the interested party and the other entity to which the employee is referred for services.

(B) An agreement, debt instrument, or lease or rental agreement between the interested party and the other entity that provides compensation based upon, in whole or in part, the volume or value of the services provided as a result of referrals.

(2) "Interested party" means any of the following:

(A) An injured employee.

(B) The employer of an injured employee, and, if the employer is insured, its insurer.

(C) A claims administrator, which includes, but is not limited to, a self-administered workers' compensation insurer, a self-administered self-insured employer, a self-administered joint powers authority, a self-administered legally uninsured employer, a third-party claims administrator for an insurer, a self-insured employer, a joint powers authority, or a legally uninsured employer or a subsidiary of a claims administrator.

(D) An attorney-at-law or law firm that is representing or advising an employee regarding a claim for compensation under Division 4 (commencing with Section 3200).

(E) A representative or agent of an interested party, including either of the following:

(i) An employee of an interested party.

(ii) Any individual acting on behalf of an interested party, including the immediate family of the interested party or of an employee of the interested party. For purposes of this clause, immediate family includes spouses, children, parents, and spouses of children.

(F) A provider of any medical services or products.

(3) "Services" means, but is not limited to, any of the following:

19

(A) A determination regarding an employee's eligibility for compensation under Division 4 (commencing with Section 3200), that includes both of the following:

(i) A determination of a permanent disability rating under Section 4660.

(ii) An evaluation of an employee's future earnings capacity resulting from an occupational injury or illness.

(B) Services to review the itemization of medical services set forth on a medical bill submitted under Section 4603.2.

(C) Copy and document reproduction services.

(D) Interpreter services.

(E) Medical services, including the provision of any medical products such as surgical hardware or durable medical equipment.

(F) Transportation services.

(G) Services in connection with utilization review pursuant to Section 4610.

(b) All interested parties shall disclose any financial interest in any entity providing services.

(c) Except as otherwise permitted by law, it is unlawful for an interested party other than a claims administrator or a network service provider to refer a person for services provided by another entity, or to use services provided by another entity, if the other entity will be paid for those services pursuant to Division 4 (commencing with Section 3200) and the interested party has a financial interest in the other entity.

(d)(1) It is unlawful for an interested party to enter into an arrangement or scheme, such as a cross-referral arrangement, that the interested party knows, or should know, has a purpose of ensuring referrals by the interested party to a particular entity that, if the interested party directly made referrals to that other entity, would be in violation of this section.

(2) It is unlawful for an interested party to offer, deliver, receive, or accept any rebate, refund, commission, preference, patronage, dividend, discount, or other

20

consideration, whether in the form of money or otherwise, as compensation or inducement to refer a person for services.

(e) A claim for payment shall not be presented by an entity to any interested party, individual, third-party payer, or other entity for any services furnished pursuant to a referral prohibited under this section.

(f) An insurer, self-insurer, or other payer shall not knowingly pay a charge or lien for any services resulting from a referral for services or use of services in violation of this section.

(g)(1) A violation of this section shall be misdemeanor. If an interested party is a corporation, any director or officer of the corporation who knowingly concurs in a violation of this section shall be guilty of a misdemeanor. The appropriate licensing authority for any person subject to this section shall review the facts and circumstances of any conviction pursuant to this section and take appropriate disciplinary action if the licensee has committed unprofessional conduct, provided that the appropriate licensing authority may act on its own discretion independent of the initiation or completion of a criminal prosecution.  Violations of this section are also subject to civil penalties of up to fifteen thousand dollars ($15,000) for each offense, which may be enforced by the Insurance Commissioner, Attorney General, or a district attorney.

(2) For an interested party, a practice of violating this section shall constitute a general business practice that discharges or administers compensation obligations in a dishonest manner, which shall be subject to a civil penalty under subdivision (e) of Section 129.5.

(3) For an interested party who is an attorney, a violation of subdivision (b) or (c) shall be referred to the Board of Governors of the State Bar of California, which shall

21

review the facts and circumstances of any violation pursuant to subdivision (b) or (c) and take appropriate disciplinary action if the licensee has committed unprofessional conduct.

(4) Any determination regarding an employee's eligibility for compensation shall be void if that service was provided in violation of this section.

(h) The following arrangements between an interested party and another entity do not constitute a "financial interest in another entity" for purposes of this section:

(1) A loan between an interested party and another entity, if the loan has commercially reasonable terms, bears interest at the prime rate or a higher rate that does not constitute usury, and is adequately secured, and the loan terms are not affected by either the interested party's referral of any employee or the volume of services provided by the entity that receives the referral.

(2) A lease of space or equipment between an interested party and another entity, if the lease is written, has commercially reasonable terms, has a fixed periodic rent payment, has a term of one year or more, and the lease payments are not affected by either the interested party's referral of any person or the volume of services provided by the entity that receives the referral.

(3) An interested party's ownership of the corporate investment securities of another entity, including shares, bonds, or other debt instruments that were purchased on terms that are available to the general public through a licensed securities exchange or NASDAQ.

(i) The prohibitions described in this section do not apply to any of the following:

(1) Services performed by, or determinations of compensation issues made by, employees of an interested party in the course of that employment.

(2) A referral for legal services if that referral is not prohibited by the Rules of Professional Conduct of the State Bar.

(3) A physician's referral that is exempted by Section 139.31 from the prohibitions prescribed by Section 139.3.

22